# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-1768V
UNPUBLISHED

| | |
|---|---|
| ROBERT SCHENCK,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: February 10, 2023<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Guillain-Barre Syndrome<br>(GBS) |

*Emily Beth Ashe*, Anapol Weiss, Philadelphia, PA, for Petitioner.

*Tyler King*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION AWARDING DAMAGES[1]

On August 27, 2021, Robert Schenck filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered Guillain‑Barré syndrome ("GBS") which meets the Table definition for GBS or which, in the alternative, was caused-in-fact by the influenza vaccine he received on November 1, 2020. Petition at 1, ¶ 3. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters. After Respondent conceded entitlement, the parties were unable to resolve damages on their own,[3] so I ordered briefing on the matter.

---

[1] Because this Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E‑Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

[3] One month after Petitioner was determined to be entitled to compensation, Petitioner informed me that they had reached an impasse in their damages discussions and requested a damages hearing. Status Report, filed October 28, 2022, ECF No. 29.

For the reasons set forth below, I find that Petitioner is entitled to an award of damages in the amount **$150,000.00**, reflecting actual pain and suffering.

## I.     Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[4] *Hodges v. Sec'y of*

---

[4] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of GBS claims, were assigned to former Chief Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

*Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

## II.   The Parties' Arguments

Petitioner seeks only compensation for his pain and suffering, asserting that the severity of his GBS illness warrants an award of $170,000.00. Petitioner's Brief in Support of Damages ("Brief") at 5, 8, filed Dec. 14, 2022, ECF No. 31. To support that sum, Petitioner insisted that his circumstances were similar to those experienced by the petitioners in *Francesco, Gruba, Robinson,* and *Gross*[5] – cases involving past pain and suffering awards ranging from $160,000.00 to $165,000.00. Brief at 6-7.

To justify the slightly greater amount he seeks, Petitioner stressed "the specific circumstances surrounding his diagnosis, treatment course, and sequelae most specifically his inability to get the COVID-19 vaccine." Brief at 7. Specifically, he emphasized the fall he experienced prior to his week-long hospitalization, the lumbar puncture and five courses of IVIG treatment he underwent, his 20 days of inpatient rehabilitation, and need for a walker thereafter. *Id.* at 5. Referencing his and his wife's affidavits, Petitioner notes that after his fall, he was forced to rely upon his wife who had recently undergone brain surgery, missed his family's Thanksgiving celebration, his mother's funeral, and grandson's college graduation, was unable to play golf, and had to limit the celebration of his and his wife's 50th wedding anniversary. *Id.* at 5-6 (citing Exhibits 13-14). Additionally, because she was unable to drive, his wife could not visit him during his month-long treatment and rehabilitation. Brief at 5 (citing Exhibit 13 at ¶ 10; Exhibit 14 at ¶ 4).

In contrast, Respondent argued that Petitioner's past pain and suffering was not as severe as that described *Shankar* and *Dillenbeck*, involving awards of $135,000.00 and $170,000.00, repesctively.[6] Respondent's Brief on Damages ("Opp.") at 10-12, filed

---

[5] *Francesco v. Sec'y of Health & Hum. Servs.,* No. 18-1622V, 2020 WL 6705564 (Fed. Cl. Spec. Mstr. Apr. 27, 2020) (awarding $165,000.00 for actual pain and suffering); *Gruba v. Sec'y of Health & Hum. Servs.,* No. 19-1157V, 2021 WL 1925630 (Fed. Cl. Spec. Mstr. Aug. 7, 2020) (awarding $165,000.00 for actual pain and suffering); *Robinson v. Sec'y of Health & Hum. Servs.,* No. 18-0088V, 2018 WL 5820967 (Fed. Cl. Spec. Mstr. Aug. 31, 2021) (awarding $160,000.00 for actual pain and suffering); *Gross v. Sec'y of Health & Hum. Servs.,* No. 19-0835V, 2021 WL 2666685 (Fed. Cl. Spec. Mstr. Mar. 11, 2021), *review denied,* 154 Fed. Cl. 109 (2021) (awarding $160,000.00 for actual pain and suffering).

[6] *Shanker v. Sec'y of Health & Hum. Servs.,* No. 18-1382V, 2022 WL 2196407 (Fed. Cl. Spec. Mstr. May 5, 2022) (awarding $135,000.00 for actual pain and suffering); *Dillenbeck v. Sec'y of Health & Hum. Servs.,* No. 17-0428V, 2019 WL 4072069 (Fed. Cl. Spec. Mstr. July 29, 2019) (a decision I issued awarding $170,000.00 for past pain and suffering and $10,857.15, the net present value of payments of $5,000.00 per year for 22 years).

Dec. 14, 2022, ECF No. 32. Emphasizing the lack of complications during his hospitalization and subsequent inpatient rehabilitation and impressive recovery thereafter, Respondent proposed Petitioner should be awarded $105,000.00 for his past pain and suffering. *Id.* at 1, 9.

In his responsive brief, Petitioner insisted that Respondent's proposed award "is unequivocally insufficient to compensate Petitioner for the pain and suffering he endured." Petitioner's Reply Brief in Support of Damages, filed Dec. 29, 2022, ECF No. 33. Maintaining that Respondent mischaracterized the extent of his IVIG treatment when stating he underwent one round of IVIG, Petitioner argued Respondent "appears to fail to consider a few significant facts in its assessment of the severity of Petitioner's case." *Id.* He specifically mentioned his 20-day inpatient rehabilitation, five rounds of IVIG treatment, residual extremity numbness and tingling, and inability to receive the COVID vaccine. *Id.* at 2.

Respondent criticized the comparable cases offered by Petitioner. Respondent's Response to Petitioner's Damages Brief ("Res. Reply") at 1-2, filed Dec. 29, 2022, ECF No. 34. He mentioned the complication the *Robinson* petitioner experienced while hospitalized – concerns for a pulmonary embolism and transfer to the intensive care unit and her young age and inability to care for her children while hospitalized. *Id.* at 1-2 (citing *Robinson,* 2018 WL 5820967, at *2, 6). Emphasizing the length of the *Fedewa* petitioner's hospital stay and difficulties related to his diagnostic tests and treatment, Respondent argued that "[P]etitioner's case is less severe in course, treatment, and sequela than the cases she cites." Res. Reply at 2 (citing *Fedewa,* 2020 WL 1915138, at *5).

### III.    Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of his injury. Therefore, I analyze principally the severity and duration of petitioner's injury.

In performing this analysis, I have reviewed the record as a whole, including the medical records, affidavits, and all assertions made by the parties in written documents. I considered prior awards for pain and suffering in both SPU and non-SPU GBS cases and rely upon my experience adjudicating these cases.[7] However, I ultimately base my

---

[7] Statistical data for all GBS cases resolved in SPU by proffered amounts from inception through January 1, 2023 reveals the median amount awarded to be $170,000.00. The awards in these cases - totaling 261, have typically ranged from $125,196.11 to $250,000.00, representing cases between the first and third quartiles and awards comprised of all categories of compensation – including lost wages. 33 cases include the creation of an annuity to provide for future expenses.

4

determination on the circumstances of this case.

The evidence shows that Petitioner – age 71 when vaccinated - suffered a mild GBS illness which had resolved, except for some residual tingling in his feet within less than two months. Exhibit 9 at 10. However, his suffering was heightened by the difficulties presented by his wife's recovery from recent brain surgery, his mother's passing, and further limitations presented by the timing of his GBS illness – during the worldwide COVID pandemic. Exhibit 13 at ¶¶ 2, 10-18; Exhibit 14 at ¶¶ 3-4. Additionally, he was hospitalized for approximately one week, received a five-day course of IVIG, and required 20 days of inpatient rehabilitation. Exhibits 2-3. And he reported multiples falls and an inability to ambulate prior to hospitalization. Exhibit 2 at 22.

Thus, the cases cited by Petitioner offer good comparison to the circumstances Petitioner experienced. All involved hospitalization lasting approximately one week and similar initial symptoms. *Francesco*, 2020 WL 6705564, at *2; *Gruba*, 2021 WL 1925630, at *2; *Robinson*, 2018 WL 5820967, at *2; *Gross*, 2021 WL 2666685, at *4. However, Petitioner required only 22 days of inpatient rehabilitation and physical therapy ("PT"), compared to the duration required for the *Francesco, Gruba,* and *Robinson* petitioners – two to three months. *Francesco*, 2020 WL 6705564, at *2; *Gruba*, 2021 WL 1925630, at *2; *Robinson*, 2018 WL 5820967, at *2-3. And the GBS injury suffered by these petitioners spanned at least a year. *Francesco*, 2020 WL 6705564, at *2-3; *Gruba*, 2021 WL 1925630, at *1-2; *Robinson*, 2018 WL 5820967, at *2-3; *Gross*, 2021 WL 2666685, at *4-5. However, except for some non-painful tingling in his hands, Petitioner was almost fully recovered within two months. Exhibit 9 at 10. Thus, Petitioner's past pain and suffering award should be slightly lower than the range awarded in these cases.

However, I find Respondent's assertion – that Petitioner's pain and suffering was less than that suffered by the *Shanker* petitioner - unpersuasive. The *Shanker* petitioner was noted to be almost back to baseline upon her discharge from inpatient rehabilitation after nine days. *Shanker,* 2022 WL 2196407, at *2. And that individual did not experience the additional difficulties presented in Petitioner's cases – his wife's recent surgery and mother's passing.

As I have explained previously at expedited "Motions Day" hearings, it is my view that GBS pain and suffering awards generally should be higher than those awarded to petitioners who have suffered a less frightening and physically-alarming injury, such as SIRVA. Thus, Petitioner's pain and suffering award should be greater than the

---

Past pain and suffering amounts awarded in substantive decisions issued in 21 SPU GBS cases range from $125,000.00 to $192,500.00, with an additional case involving annuity payments. The median amount award in these 22 cases was $165,000.00. Awards in cases falling with the first and third quartiles range from $155,000.00 to $180,000.00.

$105,000.00 proposed by Respondent. Weighing all of the above, I deem an award of $150,000.00 to be fair and reasonable.

## Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $150,000.00 represents a fair and appropriate amount of compensation for Petitioner's past/actual pain and suffering.[8]**

**I therefore award Petitioner a lump sum payment of $150,000.00, representing compensation for his actual pain and suffering in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[9]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[8] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[9] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.